UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

**MARTY A. CASTLE**             ]
                                ]
   Plaintiff,              ]
                                ]
   vs.                     ]   CV 12-J-1847-W
                                ]
**MICHAEL J. ASTRUE,**           ]
**Commissioner of the Social**   ]
**Security Administration**,    ]
                                ]
   Defendant.

## MEMORANDUM OPINION

The plaintiff appeals from the decision of the Commissioner of Social Security denying him disability insurance benefits and supplemental security income. The case is now properly before the court. *See* 42 U.S.C. § 405(g). At the time of his first hearing[1] before the Administrative Law Judge ("ALJ"), the plaintiff was 40 years old and had completed the ninth grade (R. 99-100). The plaintiff alleged an inability to work due to lower back pain (R. 103, 114); bipolar disorder (R. 53), anxiety (R. 70), hip pain (R. 103), COPD (R. 114), and stress (R. 114-115). He alleges that even with medication, the pain is a nine on a scale of one to ten (R. 103). He spends about six hours a day lying down (R. 104), can walk only a quarter of a block before he has to rest (R. 104), can lift nothing over five pounds (R. 106), cannot stoop, squat or bend (R. 106), can sit for 10-15 minutes before he must stand, and can stand for only 10 minutes before he has to sit (R. 105).

---

[1] The ALJ had three separate hearings spanning approximately 15 months. Both the April 7, 2009, hearing (R. 97-117), and the November 13, 2009, hearing (R. 65-96), were halted so that further consultative evaluations of the plaintiff could be obtained. The third hearing, the only one to include VE testimony, was held July 8, 2010 (R. 36-64).

The ALJ found that the plaintiff's impairments which are severe are chronic obstructive pulmonary disease, mild degenerative disc disease, lumbago, obesity and depressive disorder, but found that none of the plaintiff's impairments constituted an impairment or combination of impairments listed in, or medically equal to, one of those listed in 20 CFR Part 404, Subpart P, Appendix 1 (R. 13).

The ALJ found that the plaintiff was not capable of returning to his past relevant work, but did find that other positions exist in the national and regional economy that the plaintiff could perform, such as those listed by the VE (R. 19-20). The ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act (R. 21).

The medical records on which the plaintiff relies do show that the plaintiff has a number of ailments. The plaintiff was seen by a chiropractor for back pain from December 2005 until February 2006 (R. 386-401). He was seen in emergency rooms in September and November 2007 for kidney stones (R. 268-282, 287-297). Although the plaintiff alleges an inability to work beginning July 15, 2006 (R. 184), the next chronological medical record before the court is from August 2008, when plaintiff was admitted to the hospital with bilateral pneumonia, tobacco abuse, GERD, COPD and low back pain (R. 298). Anxiety was also noted (R. 301). He was also noted to have a past surgical history resulting in pins in his left wrist and ankle (R. 306). Upon chest CT, plaintiff was also found to have mild bronchitis and a small hiatal hernia (R. 317).

In October 2008 the plaintiff was sent to Mary Arnold, Psy. D., for a psychological consultative evaluation (R. 321). Dr. Arnold noted that the plaintiff squirmed while seated, walked with a plodding gait, and mentioned his back hurt (R. 322). She described his demeanor as "self-absorbed" and his mood as anxious (R. 322). He was alert, oriented, and able to mentally calculate change (R. 322). Dr. Arnold estimated plaintiff to be in the

borderline to low average intelligence range (R. 322). She recorded that he could dress independently, and attended church two days a week (R. 323). Dr. Arnold concluded that the plaintiff was opiate and benzodiazepine dependant, had Adjustment Disorder NOS as well as a variety of other issues, and assigned a GAF of 55[2] (R. 323). The plaintiff also had a consultative physical examination by Yonnus Ismail, M.D., that same month (R. 325). Dr. Ismail recorded that the plaintiff had shortness of breach on exertion, complains of headaches and dizziness, heartburn, and pain in his back, hips and knees (R. 325). He was also noted to be obese with poor personal hygiene, but did not appear in acute distress (R. 326). Plaintiff's strength and range of motion in his hips, knees and shoulders was normal (R. 326). Pain and tenderness were noted in plaintiff's mid and lower back, and his range of motion there was limited, and although he walked with a normal gait, he was unable to heel toe walk or squat (R. 327). Dr. Ismail concluded the plaintiff suffered from chronic back pain, COPD, GERD, and anxiety, and recommended occupational and physical rehabilitation (R. 327).

After being seen by Dr. Chad Bradford while hospitalized for pneumonia, the plaintiff began seeing Dr. Bradford as a regular, treating physician. Thus, Dr. Bradford's office records of plaintiff begin in September 2008 (R. 334). At that time, the plaintiff was noted to be "doing better," although back pain was noted and he was prescribed Xanax, Lortab, Albuterol, and Chantix (R. 334). X-rays of plaintiff's lumbar spine identified no abnormality (R. 337) and thus Dr. Bradford included the diagnosis of lumbago[3] (R. 335). In a follow-up

---

[2] GAF stands for Global Assessment of Functioning, a scale used by clinicians to reflect an individual's overall level of functioning. *See* Diagnositic and Statistical Manual of Mental Disorders, (DSM-IV), 34 (4th ed.2000). A GAF of 55 indicated moderate symptoms or moderate difficulty in social, occupational or school functioning. *Id.*

[3] Lumbago is defined as "acute or chronic pain (as that caused by muscle strain) in the lower back." http://www.merriam-webster.com/medlineplus/lumbago

visit, Dr. Bradford recorded that the plaintiff described his back pain as "continuous and chronic" and "aching and radiating" (R. 332). Rest helped, activity made it worse, the pain was moderate, and the plaintiff reported it was getting worse (R. 332). X-rays were noted to be normal and Dr. Bradford left the diagnoses as lumbago, GERD and anxiety (R. 333). In November 2008 Dr. Bradford added a diagnosis of COPD (R. 330). The plaintiff returned to Dr. Bradford in December 2008 and January 2009 (R. 372-375). Those records show no change in plaintiff's conditions from November 2008 (R. 372-373). However, the plaintiff was given shots of Decadron for his back pain (R. 373, 375).

In January 2009 Dr. Bradford completed a Physical Residual Functional Capacity Questionnaire ("RFC"), in which he opined that the plaintiff suffered from lumbago, COPD, anxiety and GERD (R. 376-380). He stated that plaintiff's prognosis was poor, that he had pain, anxiety and arthralgia, limited range of motion, and suffered from sedation, drowsiness and dizziness from his medications (R. 376). He believed plaintiff's pain to be severe enough to interfere with his ability to concentrate, that he was incapable of even low stress jobs, and could walk less than one block, and sit and stand no more than five minutes at a time and less than two hours total in an eight hour work day (R. 377-378). He also opined that the plaintiff would need to walk around every 30 minutes for 10 minutes at a time, and need unscheduled breaks in which he would have to rest before returning to work (R. 378). He also limited the plaintiff to lifting no more than 10 pounds rarely and nothing more than that ever (R. 378). He also noted the plaintiff had a wide variety of postural limitations, and that he could be expected to miss more than four days of work per month due to his ailments (R. 379). No specific diagnosis is stated as the cause of these quite severe limitations ascribed by Dr. Bradford. Dr. Bradford's records from plaintiff's office visits in February and March 2009 do not provide any further information as to these

limitations either (R. 381-385). A hip x-ray in April 2009 also found no acute abnormality (R. 403). His April and May 2009 treatment records add a diagnosis of degenerative disc disease NOS (R. 453- 454). At the end of May 2009 Dr. Bradford's records reflect that the plaintiff has moderate pain, but reported it as a 9 to 10 out of 10 (R. 450). In August 2009 Dr. Bradford recorded that the plaintiff was "frustrated about his situation and that he is having his disability delayed" (R. 444). A July 2009 x-ray of plaintiff's left shoulder was normal (R. 457). His September 2009 medical record noted that the plaintiff had a "recent episode of syncope. On the last visit the plaintiff was diagnosed with laceration. he (sic) states that he was at a friends (sic) house and he passed out and landed into some grease. they (sic) tried to work him up at er and he left ama" (R. 442). Dr. Bradford's September and October 2009 records reflect that the plaintiff has a swollen lower lip with stitches intact (R. 441, 443). A September 2009 CT scan of plaintiff's head and chest x-ray were both normal (R. 458-459).

The plaintiff was sent back to Dr. Ismail for a second physical consultative evaluation in April 2009 (R. 407-417). That evaluation found results similar to the first. Dr. Ismail noted that the plaintiff complained of pain upon touching his back, with limited range of motion in his lower back, but not his shoulders, arms, wrists or hands (R. 414, 416-417). Additionally, although plaintiff complained of pain in his hip, his range of motion was close to normal, range of motion in his knees was normal, and he had a normal gait *Id.* Dr. Ismail formed diagnoses of chronic back pain, chronic extremity pain, possible arthritis, COPD, GERD, and anxiety (R. 415). He believed the plaintiff should receive physical and occupational therapy, as well as a psychiatric evaluation (R. 415). In Dr. Ismail's opinion, the plaintiff could lift and carry 10 pounds frequently and up to 20 pounds occasionally (R. 407), sit for two hours at a time and four hours in an eight hour work day, stand for an hour

at a time and two hours in a work day, and walk for half an hour at a time, and one hour in a work day (R. 408).  However, he also noted that the plaintiff needed a cane to ambulate (R. 408).  He believed the plaintiff could perform a variety of activities with his hands, such as reaching and grasping ranging from occasionally to frequently and could operate foot controls frequently (R. 409).  He did limit the plaintiff to activities such as climbing stairs, bending and stoops on an occasional basis (R. 410).

The plaintiff was sent to Dr. Ismail a third time in July 2009 (R. 425).  That evaluation was similar to the April 2009 evaluation and resulted in similar diagnoses and recommendations (R. 425-427). In yet another RFC, Dr. Ismail opined that the plaintiff could lift and carry five pounds continuously and 10 pounds frequently (R. 419).  His opinions on plaintiff's ability to sit, stand and walk remained unchanged, and his opinion still reflected that the use of a cane was medically necessary (R. 420).  He noted the plaintiff could use his hands for work related activities frequently, but could use his legs for operation of foot controls only occasionally (R. 421).  In response to the apparent limitation to seven hours of sitting, standing and walking in an eight hour work day, the ALJ inquired whether Dr. Ismail was so restricting the plaintiff (R. 428), to which Dr. Ismail replied the same was in error, and the plaintiff could sit for a total of six hours in an eight hour work day (R. 430).

In August 2009 Dr. Bradford wrote a letter stating that he did not believe plaintiff was able to work due to psychiatric conditions such as bipolar disorder, anxiety and substance abuse disorder (R. 466).  He noted that COPD and chronic back pain contributed to his inability to perform in a job setting, but believed plaintiff needed another psychiatric exam

6

(R. 466). In November 2009 Dr. Bradford completed Mental RFC Questionnaire,[4] in which he opined that the plaintiff could not cooperate, understand questions, suffered from inattentiveness, poor judgment and had low intelligence (R. 461). He noted the plaintiff suffered from anhedonia, decreased energy, thoughts of suicide, and inappropriate affect, feelings of guilt, somalization, mood disturbances, difficulty thinking, paranoia, substance dependence, bipolar syndrome, hyperactivity, manic episodes, sleep disturbances, loss of intelligence of 15 points or more and recurrent severe panic attacks (R. 462). Dr. Bradford opined that such conditions essentially rendered the plaintiff unable to cope in any work setting, and opined that the plaintiff suffered from "somatization with low pain threshold secondary to coexisting mental illness" (R. 464).

The plaintiff was sent back to Dr. Ismail a fourth time for a neurological examination in March 2010 (R. 468). At that time, the plaintiff reported the onset of seizures three months previously, but was on no medication for the same (R. 468). In addition to ongoing back pain, the plaintiff also mentioned migraine headaches, chronic bronchitis, depression and anxiety (R. 468). Dr. Ismail noted that the plaintiff had two episodes of passing out and some generalized shakiness, but also noted he was not seen by a neurologist, had no medications prescribed for seizures, and had a history of heavy narcotic use and substance abuse in the past (R. 469). Upon examination, the plaintiff's strength was again normal in the major muscle groups (R. 469). His ranges of motions were unchanged from previous examinations (R. 470). Dr. Ismail updated his diagnoses to chronic back pain, anxiety, insomnia, GERD, migraines, COPD, and questionable seizure disorder (R. 470).

---

[4]Dr. Bradford is a medical doctor. The court has nothing before it to suggest that Dr. Bradford has any training in psychiatry or psychology as well.

A physical capacities evaluation completed in March 2010 reduced plaintiff's limitations slightly from the ones previously ascribed by Dr. Ismail (R. 471-476).

The plaintiff was also sent back to Dr. Arnold for an additional psychological examination (R. 478). She noted his complaints and that Dr. Bradford had diagnosed him with bipolar disorder, but added that he did not meet the criteria for such a diagnosis (R. 478). She also notes that his demeanor was "immediately defensive" (R. 479). She further noted that his "dependence for daily needs is counterproductive in terms of mental health (R. 479). His mood was noted to be anxious and his affect tense (R. 479). He was able to add change mentally, count backward, name the president and the Alabama governor and display goal oriented thinking (R. 479). She assigned a GAF of 45 "based on lifestyle"[5] (R. 481). Dr. Arnold completed a Mental Medical Source Statement, in which she opined that the plaintiff had no more than moderate limitations in carrying out complex instructions, and no limitations for simple instructions (R. 482), and was moderately limited in interacting with the public, supervisors, and co-workers (R. 483).

Both Dr. Bradford's and emergency room records from May 24, 2010, show plaintiff reported chest pain, dizziness and weakness (R. 485, 498), and numbness in his legs (R. 487). Upon discharge from the emergency room, the plaintiff was noted to be "pain free" (R. 489). Two days later, the plaintiff returned to Dr. Bradford, whose records reflect the plaintiff was taken by ambulance to the hospital due to chest pain and anxiety, and further note that the plaintiff was having to take medication more frequently due to a situation with a neighbor (R. 496). His visit to Dr. Bradford the following month shows diagnoses of

---

[5]A GAF of 45 is indicative of "serious symptoms or any serious impairment in social, occupational, or school functions." DSM-IV, at 34.

8

degenerative disc disease, insomnia, lumbago and COPD (R. 495), but those records have no reference to chest pain or anxiety.

Following the date of the hearing decision, Dr. Bradford again completed a physical RFC (R. 514). In it, he again opines that the plaintiff is so limited he could not perform gainful activity eight hours a day (R. 514-520).

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining: 1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and 2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401, 91 S. Ct. 1420, 28 L. Ed. 843 (1971); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The Court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, this limited scope does not render affirmance automatic,

> for "despite [this] deferential standard for review of claims . . . [the] Court must scrutinize [the] record in its entirety to determine reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

*Lamb*, 847 F.2d at 701. Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 634 (11th Cir. 1984).

The ALJ found that while the plaintiff had physical limitations, there was simply no evidence in the record which supported the degree of limitation described by plaintiff or his treating physician. Similarly, there was no support in the record for the degree of mental limitation claimed by the plaintiff, especially given that he had never sought mental health treatment. While the plaintiff alleges disability beginning in 2006, his medical records prior to September 2008 reflect only that he had kidney stones in 2007 and pneumonia in 2008.

While plaintiff's treating physician opined in January 2009 that the plaintiff was physicially unable to work, there is no objective medical evidence that supports such a finding, nor is there a diagnosis that supports the degree of limitation put forth by Dr. Bradford.

Based upon the court's evaluation of the evidence submitted to and adduced at the hearing before the Administrative Law Judge and considered by him and the Appeals Council, the court is satisfied that the decision of the Administrative Law Judge is based upon substantial evidence and that the Administrative Law Judge applied the correct legal standards. Accordingly, the decision of the Commissioner of the Social Security Administration will be affirmed by separate order.

Done, this 13th of December, 2012.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE